UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARK HUGHES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:04-cv-129 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| MICHAEL KELLEY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| | ) | |

This is a civil rights action alleging excessive force in connection with an arrest. Plaintiff asserts that defendant Michael Kelley, an officer of the Kalamazoo Department of Public Safety, violated plaintiff's Fourth Amendment right to be free from unreasonable seizure when Kelley struck plaintiff in the back of the head with a flashlight when effecting an arrest on July 11, 2003, in the City of Kalamazoo. Discovery is now closed, and defendant has moved for summary judgment and has asserted the defense of qualified immunity.

By order of reference entered October 7, 2004, Judge David W. McKeague referred this matter to me for pretrial purposes, including the filing of a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). Since that time, the case has been reassigned to Chief Judge Robert Holmes Bell. I conducted a hearing on defendant's motion on March 21, 2006. For the reasons set forth below, I conclude that unresolved material issues of fact prevent the entry of summary judgment for defendant on either ground raised in the motion.

**Proposed Findings of Fact**

The background facts are essentially undisputed, until the events immediately preceding defendant's use of force. The following recitation of facts set forth those facts that are undisputed, and then notes the factual disagreement between the parties concerning the circumstances surrounding defendant's use of force.

On July 11, 2003, at approximately 10:00 p.m., plaintiff Mark Hughes was a passenger in a motor vehicle driven by Frank Smith. At the time, Hughes was on parole. He had been drinking and had consumed crack cocaine. In addition, he had distribution quantities of crack cocaine on his person. Defendant Officer Michael Kelley of the Kalamazoo Department of Public Safety was following the vehicle, because it was in the vicinity of a known drug house. He noticed the vehicle engage in an illegal lane change, activated his lights, and effected a traffic stop. The driver, Frank Smith, pulled into the parking lot of Lee's Famous Recipe Restaurant.

Because he was intoxicated and in possession of cocaine, plaintiff decided to run. He ignored the officer's command to stop and continued to flee. A foot pursuit ensued. Plaintiff scaled a six-foot chainlink fence and fell to the ground. The area was dark and unpopulated.

At this point in the narrative, the parties' stories diverge widely. Officer Kelley testified that he saw plaintiff lying face down on the ground and ordered him to stay down, but plaintiff refused to comply. Rather, plaintiff rose, took a fighting stance, and raised his fists towards the officer. Kelley, anticipating an assault, tackled plaintiff to the ground and struck him once in the head with his fist during the struggle. The hand that the officer used to strike plaintiff happened to have a flashlight in it. After being struck in the head, plaintiff ceased resisting and was taken into

custody. Subsequent search of the area where plaintiff was lying revealed a large baggy with eight smaller Ziplock bags inside, each containing crack cocaine.

Plaintiff's deposition tells a much different story. Plaintiff testified that he jumped over the fence and laid on the ground for less than a minute. (Dep., 28). He heard the officer come over the fence and heard him land. When he landed, Kelly said, "You stupid fucker, I cut my hand, stay on the ground." (Dep., 29). At this point, plaintiff was lying on his stomach and tried to get up and run, but he slipped to one knee. (Dep., 30). As a result of the slip, his right leg was extended behind him and his left knee was on the ground. (Dep., 31). He got on his other knee and was putting his hands in the air as he turned back to the left to look at the officer. (Dep., 31).

> Q   The leg that was extended, your right leg, up to your knee?
>
> A   I was on both knees. Okay.
>
> Q   You raised your hands?
>
> A   Yes.
>
> Q   You turned to face him?
>
> A   I turned my head.

(Dep., 31-32).

\* \* \* \*

> Q   And what happened after you raised your hands and turned around?
>
> A   When I turned around and I got a full view of him, he was holding his left hand. He has his flashlight in his right hand and he was holding his left hand. And pretty much at the same time when I turned around to him, he came up with his flashlight and I turned my head back facing east and he hit me in my head.

(Dep., 33). Plaintiff testified that he turned his head so that he would not get hit in the face, such that he did not see the actual blow hit his head. (Dep., 34). Plaintiff testified that the officer had the flashlight "in his hand as a weapon and he came down in a hammering position." (Dep., 34). The impact knocked plaintiff face down on the ground. The wound took four staples to close.

## Applicable Standards

### A.    Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *May v. Franklin County Comm'rs*, 437 F.3d 579, 583 (6th Cir. 2006); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Terry v. LaGrois*, 354 F.3d 527, 530 (6th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Rainer v. Union Carbide Corp.*, 402 F.3d 608, 614 (6th Cir. 2005); *Martingale LLC v. Louisville*, 361 F.3d 297, 301 (6th Cir.), *cert. denied*, 125 S. Ct. 453 (2004).

The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005). The party moving for summary judgment bears the initial burden of pointing out to the district court that there is an absence of evidence to support the nonmoving party's

case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once defendant shows that "there is an absence of evidence to support the nonmoving party's case," plaintiff has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### B.     Qualified Immunity Standard

Under the doctrine of qualified immunity, government officials may violate a person's constitutional rights and nevertheless be shielded from a damage award if they could not reasonably be expected to know that the Constitution prohibited their conduct. *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). In determining whether an official is entitled to this immunity, the court must decide whether the official reasonably could have thought that his actions were consistent with the rights that plaintiff claims have been violated. *Saucier v. Katz*, 533 U.S. 194, 204 (2001). Plaintiff has the burden of presenting sufficient evidence to show a violation of clearly established federal rights of which a reasonable officer in defendant's position at the time he acted would have known. *Rippy v. Hattaway*, 270 F.3d 416, 419-20 (6th Cir. 2001); *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). Under the second prong of the qualified immunity analysis, this court must determine whether, in light of clearly established law and the objective facts in possession of the arresting officer, defendant could have reasonably believed that the use of force was justified. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (*en banc*).

**Discussion**

1.   **Motion for Summary Judgment**

Defendant seeks a summary judgment in his favor on plaintiff's Fourth Amendment claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). Without question, Officer Kelley was acting under color of state law at the time of the arrest. The only issue, therefore, is whether there is a material factual dispute regarding the officer's use of force.

The Supreme Court has held that "all claims that law enforcement officers have used excessive force -- deadly or not -- in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard.'" *Graham v. Connor*, 490 U.S. 386, 389 (1989). Under this standard, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the benefit of 20/20 hindsight. *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation." *Id.* at 396-97; *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 173-74 (6th Cir. 2004). The reasonableness of an officer's action must be evaluated by a number of factors, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting or attempting to evade arrest by flight. *See Dunigan v. Noble*, 390 F.3d 486, 491

(6th Cir. 2004). An officer's use of deadly force is only reasonable if the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others. *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005).

The conflicting views of the facts presented by each party demonstrate that summary judgment is inappropriate under this standard. If the officer is to be believed, plaintiff was aggressively resisting arrest, and the decision to strike plaintiff with his hand once in an effort to subdue him was reasonable. Plaintiff testified, by contrast, that he was on his knees, with his back to the officer, with his empty hands raised in the air. According to plaintiff, he never offered violence to the officer. The officer then struck him in the back of the head with his flashlight, opening a gash that required four staples to close. The Sixth Circuit consistently holds that the gratuitous use of force on a suspect who has already been subdued is unreasonable. *See, e.g., Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (unreasonable for officers to use pepper spray on suspect who was handcuffed on the ground but continued to squirm and kick his feet in the air); *Phelps v. Coy*, 286 F.3d 295, 302 (6th Cir. 2002) (police officer's tackling of a handcuffed suspect, hitting him twice in the face, and banging his head on the floor three times was unreasonable); *McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) (a blow from a nightstick to a handcuffed, unresisting suspect was constitutionally unreasonable).[1]

---

[1] Plaintiff asserts that a blow to the head with a flashlight constitutes the use of deadly force, because of its capacity to kill or seriously injure a suspect. This assertion finds factual support in the record, including both the City of Kalamazoo's Use of Force Policy (Plf. Ex. 3, ¶ 1.13B1) ("For example, a flashlight blow to the head could result in great bodily harm or death."), and in the deposition testimony. (Dep. of Inspector Victor Green at 45). It is not necessary, however, to determine at this stage whether defendant used deadly force, as the use of any significant force under the circumstances plaintiff described in his deposition testimony would have been unreasonable.

In seeking summary judgment on plaintiff's Fourth Amendment claim, defendant makes the mistake of arguing only his version of the facts and depriving plaintiff of all reasonable inferences. Defendant argues that, even if the jury were to accept plaintiff's testimony, the officer was nevertheless justified in using force, because plaintiff disobeyed the officer's command to stay on the ground and turned his head towards the officer. Defendant further argues that a reasonable trier of fact could not conclude that the officer used his flashlight as a weapon, because the officer testified that his knuckles were bruised and plaintiff did not see the actual blow. Each of these arguments construes the facts in a manner most favorable to defendant. Accepting plaintiff's testimony at face value, a jury could conclude that plaintiff was kneeling on the ground with his hands up, offering no resistance or threat to the officer. The mere turning of a suspect's head or shifting of his weight to both knees could not be deemed justification for the use of force. A reasonable trier of fact could further conclude that the officer, using his flashlight as a club, struck plaintiff in the back of the head without provocation. The ability of a reasonable trier of fact to believe plaintiff's version of events and to disbelieve defendant's renders summary judgment inappropriate.

For the foregoing reasons, I conclude that unresolved issues of material fact render summary judgment inappropriate.

### B.   Qualified Immunity

When an officer asserts a qualified immunity defense, the court must employ a two-part test. The first inquiry must be whether a constitutional right would have been violated on the facts alleged. Second, assuming the violation is established, the question whether the right was

clearly established must be considered. *See Sigley v. City of Parma Heights*, 437 F.3d 527, 537 (6th Cir. 2006) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)); *see also Silberstein v. City of Dayton*, No. 05-3630, ___ F.3d ___, 2006 WL 508074, at * 3 (6th Cir. Mar. 3, 2006). The plaintiff is obliged to present facts which, if true, would constitute a violation of clearly established law. *Id.*

The first question is whether, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. As noted in the previous section, plaintiff's testimony, accepted as true for present purposes, would allow a reasonable trier of fact to conclude that defendant used excessive force in subduing plaintiff in violating the Fourth Amendment. The only other issue, therefore, is whether at the time Officer Kelley acted, no reasonable officer would have known that Kelley's use of force was unconstitutional. *See Kane v. Nesbitt*, 156 F.3d 669, 671 (6th Cir. 1998). In determining this question, the court is to be guided by decisions of the Sixth Circuit and of the Supreme Court. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *accord Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598, 608 (6th Cir. 2005).

It is well established in the Sixth Circuit that the gratuitous use of force on a suspect who has already been subdued is unconstitutional. The concept was established as early as 1988 that striking a suspect with a nightstick when the suspect is not resisting arrest or presenting a danger to the officer is objectively unreasonable. *See McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988). In *McDowell*, the suspect was already handcuffed, but that fact does not serve to distinguish *McDowell* from the present case, if plaintiff's allegations are to be believed. Although plaintiff was not handcuffed, he testified that he was on his knees with his hands in the air, which would clearly display to a reasonable officer the lack of a threat. The Supreme Court has recently recognized that

in "an obvious case" general standards can clearly establish the wrongfulness of an officer's conduct, even without a case directly on point. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). The Sixth Circuit Court of Appeals has relied on *Brosseau* in determining that an officer was not entitled to qualified immunity for the use of deadly force, even though a factually similar precedent may not have existed, because the unlawfulness of the officer's actions should have been obvious under general principles. *See Sample v. Bailey*, 409 F.3d 689, 698-700 (6th Cir. 2005). The body of Sixth Circuit law available to a reasonable officer in July of 2003 would have made it plain that clubbing a kneeling suspect in the back of the head with a flashlight after the suspect had raised his hands in the air was unreasonable and therefore a violation of a Fourth Amendment.

       The Sixth Circuit has long held that a dispute of the essential facts surrounding the use of force bars a summary judgment on the defense of qualified immunity. *See, e.g., Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988). The comments of the Court of Appeals made fifteen years ago in a similar case apply to the present case as well:

> The parties dispute virtually all of the essential facts surrounding the excessive force claim. Assuming the law is clearly established that a police officer may not use excessive force in effecting an arrest, it is impossible to determine, without choosing the parties' sharply different factual accounts, whether the force the officers used, objectively assessed, was reasonable.

*Jackson v. Hoylman*, 933 F.2d 401, 403 (6th Cir. 1991); *accord, Tapp v. Banks*, 1 F. App'x 344, 350-51 (6th Cir. 2001) (factual issue concerning whether officer's striking at arrestee's knees with a flashlight was unprovoked prevented entry of summary judgment on qualified immunity defense).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendant's motion for summary judgment (docket # 30) be denied in its entirety.


Dated:   March 22, 2006                         /s/  Joseph G. Scoville
                                                United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).